RICHARD E- PARKER, J.,
delivered the opinion of the Court:
In this Case, the prisoner, and two other persons, (William Ervin and Rachel Rasnick,) were jointly indicted under the first section of the Act of Assembly, intituled, “An Act reducing into one the several Acts for punishing persons guilty of certain thefts and forgeries,” &c. (a) The Indictment charged that they “seventy-five pieces of false, counterfeit, and base money, and coin, of pewter, *lead, tin and other mixt metals, of the likeness and similitude of the good, legal and current money and silver coin within this Commonwealth, called Spanish milled dollars, then and there falsely and feloniously did falsely make, forge, and counterfeit, and did cause and procure to be falsely made, forged and counterfeited, and did willingly act and assist in the said false making, forging and counterfeiting, against the form, &c.”
This is the only Count in the Indictment, and upon this he was separately tried and convicted.
By the evidence which is spread on the record in a Bill of Exceptions to the opinion of the Court over-ruling a motion for a new trial, it appears that Ervin brought the base coin to the house of John Rasnick, where the prisoner was, and that the pieces had then the impression and appearance of perfect dollars, except that they were of a dark colour, about the colour of lead, (and, consequently, not then passable :) that the prisoner had prepared a ley in which he boiled them, and after carrying them through several processes of this nature, and rubbing them with a woolen rag, in order to perfect them for circulation, the dollars looked brighter than before, and bore a more striking resemblance to the real coin ; such a resemblance, indeed, as induced the jury whose province it is to decide that fact, (b) to find the prisoner guilty of counterfeiting.
After the prisoner’s conviction, his Counsel moved first, for a new trial, on the ground that the facts proved against him amounted to no offence within the above recited Act, because, as was alleged, the money when brought to him having received its shape arid impression, the offence of making, forging and counterfeiting it was complete before he had any agency in the transaction: being over-ruled in that motion, he next filed errors in arrest of the judgment, alleging that the Indictment was radically defective in uniting several distinct, and incompatible offences in one Count, to wit : the crime of making base coin, of causing and procuring it to be made, and of assisting in making it without stating who he had assisted. But the Court refused to • arrest the judgment, and pronounced sentence on the prisoner according to the verdict of the jury, and a Writ of Error being awarded to its opinion, at our last *Term, and fully argued at this, the Case now stands for the final judgment of the Court.
It has been strongly urged in support of the objection to the sufficiency of the Indictment, that it not only embraces distinct and separate offences in one Count, but it confounds principal and accessorial guilt, by uniting the charge of causing and procuring base coin to be made, with that of an actual making of it, which it is argued is not only opposed to well-settled principles, but unsupported by any form of an Indictment.
Conceiving it to be an established rule, that in general, if an Indictment pursues the words of a Statute in describing an offence, as this does, it is sufficient, we were surprised to hear it asserted that no similar form could be found in the English books under Statutes like our own. Upon examining them, we have found several. Thus in Chitty, (c) there is a Count under 45 Geo. 3, ch. 89, “for that the prisoner did falsely make, forge and counterfeit^ and cause and procure to be falsely made, forged and counterfeited, and willingly act and assist in the false making, forging and counterfeiting, a certain promissory note,” &c. pursuing the very words of the Statute, as the Count under consideration does : and many similar forms are found in the subsequent pages of the same book, (d) And in the second volume, (e) is a Case in which the prisoner is charged under 52 Geo. 3, ch. 138, with “feloniously making and counterfeiting, and causing and procuring to be made, and counterfeited, and willingly acting and assisting in. the making and counterfeiting one medal called a bank token.” No one ever thought of questioning the sufficiency of these Indictments, and yet the one at bar seems to have been an exact copy from them. Nor are they liable to the objection of uniting accessorial guilt with the guilt of a principal, for the prisoners are charged as aiders and abettors at the fact. If the procurers or aiders are not present at the time, they must be indicted specifically as accessories, nor could they be convicted Under this form of Indictment, (f) and this renders it impossible that the guilt of principal and accessory properly understood should be confounded, or ^that any of the absurdities alluded to by the pounsel, can. occur. The Law makes the aiders and procurers of the forgery equally guilty with the actual offender, and where they are charged in the words of this Indictment, they are to be taken as principals in the second degree, that is, as *270 present at the time, and no objection is perceived to uniting' in one Count such an offence with the offence of principal in the first degree. When an offender present aiding and abetting was considered only as an accessory to the fact, [Foster, 347,] the objection might have been sustained, but since all persons present aiding and abetting, are now taken as principals, there can be no impropriety in uniting the offences, when by the Caw, those who commit them, are made equally guilty, and liable to the same punishment." For these reasons, we are all of opinion, that the Indictment is sufficient.
The second question argued at the Bar, was the propriety of granting the prisoner a new trial upon the evidence spread on the record. Without deciding whether the Judge did right in permitting this practice, or ought only to have certified the facts proved by the evidence, we have considered the objections made to the conviction of the prisoner, and have come to the conclusion that such conviction was proper.
The objections are, that the evidence does not prove any offence punishable by our Act; that the base money was made by Ervin before the prisoner saw it; that Ervin might have been found guilty of the false making, if the prisoner had never meddled with it at all; that the prisoner, therefore, could not be found guilty of making, &c. what was already completely made by another; that he only coloured and brightened the dollars, which is a different offénqe from ,'the offence' of making or counterfeiting them, insomuch' that the Statute of 25 Edward 3, ch. 5,. against counterfeiting, was held not to embrace the offence of colouring and brightening, but that it was found necessary to pass a new Statute, viz: that of 8 and 9 William 3, ch. 26, § 4, to punish the crime. To prove these last positions, we were referred to 6 Bac. Abr. p. 520-3, title “Treason,” letter I.
These objections are specious, and induced the Court at the last Term to grant the Writ of Error, but upon consideration, we are all of opinion that they are not tenable.
The expressions in our Act are broader than those in the Statute of Edward, and might therefore, perhaps, receive *a broader construction ; but we do not rely upon that. By the Statute of Edward, there must have been a complete counterfeiting ; at least, to such a decree of resemblance as might in circulation ordinarily impose upon the world. If the Act was only preparatory to, and in the progress of actually counterfeiting the coin, it was not treason under the Statute of Edward, (g) Therefore, the Statute of 8 and 9 William 3, ch. 26, § 4, was passed, which punished the inchoate offence of colouring, although by such colouring, the money might not in its then state pass current. This is proved by William Case’s Case, (h) who was convicted under this Statute, of colouring base coin to the appearance of lead, and which, in its then state, the jury found would not pass current. The question was, whether this offence was complete, inasmuch as the colour of silver had not been produced in any of the coins. The Counsel for the Crown argued, that if the colour of silver had been produced, it would have been treason under the Statute of Edward, and that the Statute of 8 and 9 William 3, was made to punish the inchoate offence, which before was not punishable, and in this position they are sustained by the Court.
We have no such Statute as that of 8 and 9 Wm. 3 ; and, therefore, if the dollars had not been afterwards brightened by the prisoner to the similitude of real dollars, but had been found in their then state, Ervin for his first acts could not have been convicted under our Eaw, if it is to receive the same construction as the Statute of Edward. For, the dollars, as in the case just above cited, were, when he brought them to John Ras-nick’s house, of the colour of lead, and not passable. The prisoner, assisted by Ervin and •another, made the resemblance more striking, and prepared them for circulation. He completed the offence, and not only brought himself under the provisions of our Eaw, but all those who acted a part, and were present assisting at the transaction from its commencement to its final close, or who did any thing thought necessary by themselves to enable them to impose upon the public, by making the false coin resemble the true.
The judgment of the Superior Court of Russell county is therefore affirmed.'

 1 Rev. Code of 1819, ch. 154, p. 578.

 1 East’s Crown Law, p. 163, § 13.

 3 Chltty’s Cr. Law, p. 1049.

 Ibid. p. 1048, 1052.

 2 Chitty’s Cr. Law, p. 107.

 3 Chitty, 1039 ; 2 East’s Cr. Law, 974.

 1 East’s Crown Law, p. 162,163.

 1 East’s Crown Law, p. 165.